14 CV 3945

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEWLEAD HOLDINGS LTD.,<br><br>                       Petitioner,<br><br>vs.<br><br>IRONRIDGE GLOBAL IV LIMITED,<br><br>                       Respondent,<br><br>and<br><br>VSTOCK TRANSFER, LLC, as transfer agent,<br><br>                       Notice Party. | 14 Civ. _____ ( )<br><br>**PETITION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTION IN AID OF INTERNATIONAL ARBITRATION PROCEEDING**<br><br> |

Petitioner NewLead Holdings Ltd. ("Petitioner" or "NewLead"), by its attorneys, Thompson Hine LLP, as and for its Petition herein, alleges as follows:

### *Preliminary Statement*

1. This application is made for injunctive relief in aid of a currently pending International Arbitration Proceeding (the "Arbitration") between NewLead and Respondent Ironridge Global IV Limited ("Respondent" or "Ironridge").

2. On or about May 9, 2014, Ironridge commenced the Arbitration with JAMS International ("JAMS") pursuant to a mandatory arbitration clause contained in the Share Subscription Agreement dated March 4, 2014 between the Petitioner and the Respondent (the "Subscription Agreement") seeking "monetary damages in excess of US $2,000,000.00 to date."

3. A copy of the Notice Of Intention To Arbitrate is annexed (without attachments) as Exhibit A to the Declaration Of Antonis Bertsos In Support Of Petition Of Petitioner

NewLead Holdings Ltd. For Temporary Restraining Order And Injunction In Aid Of International Arbitration Proceeding dated June 2, 2014 ("Bertsos Decl.")[1] accompanying this Petition.

4. Ironridge has demanded that the Arbitration be conducted and the hearings held in New York. See Bertsos Decl. at ¶ 6 and Exhibit A.

5. NewLead agrees on New York as the venue.

6. NewLead intends to interpose an answer and counterclaim in the Arbitration (which is not due until on or about June 20, 2014 by applicable rule) seeking (i) a declaration that (a) the Transaction Documents are terminated at NewLead's election due to Ironridge's substantial material breaches of those agreements as outlined below, and (b) even if the Transaction Documents are not terminated, Ironridge has no entitlement to additional Common Shares of NewLead; and (ii) seeking damages against Ironridge based upon its violations of the federal and state securities laws and for breach of contract and fraud.

### *Emergency Relief Is Required To Prevent Ironridge From Destroying NewLead*

7. By this Petition, NewLead seeks, *inter alia*, a temporary restraining order and an injunction in aid of the currently pending Arbitration to restrain Ironridge and those acting in concert with it, as well VStock Transfer, LLC ("VStock"), the current registrar and transfer agent for the Common Shares of NewLead listed on NASDAQ Global Select Market ("NASDAQ"), and any successor transfer agent ("Transfer Agent"), pending the confirmation of an Award issued in the Arbitration, from taking any steps whatsoever:

> (i) to convert any of the Series A Preference Shares of NewLead registered in name of Ironridge ("Preference Shares") into Common Shares of NewLead ("Common Shares"); and

---

[1] The contents of the Bertsos Declaration are incorporated herein by reference and made a part of this Petition.

(ii) to issue any Common Shares to Ironridge, whether in connection with the conversion of the Preference Shares or otherwise.

8. This application is absolutely necessary because, based directly upon Ironridge's material breaches of the contracts at issue, and its wrongful and fraudulent conduct as detailed below, NewLead is on the brink of destruction. Bertsos Decl. at ¶ 10.

9. The matter before this Court, and which is being litigated in the Arbitration, involves a "death spiral" financing and stock manipulation scheme (described in greater detail below) by Ironridge that has <u>artificially driven down the price of NewLead's Common Shares from $146.50 per share (March 13, 2014) to $0.3899 per share (May 15, 2014) in only **two months**</u>. Bertsos Decl. at ¶ 11.

10. Without injunctive relief preventing Ironridge from continuing wrongfully to obtain additional vast quantities of Common Shares and to dump those Common Shares as part of its scheme to manipulate the share price of NewLead in violation of the federal securities laws and its contractual obligations, NewLead will be irreparably harmed, as will its public shareholders and the public markets generally. Bertsos Decl. at ¶ 12.

11. NewLead discovered that Ironridge, as part of its scheme, had exceeded daily Common Share trading limitations and was "short selling" NewLead's Common Shares -- both acts being material breaches of the agreements in place. Bertsos Decl. at ¶ 13.

12. As a result, on May 12, 2014, NewLead served upon Ironridge a Notice of Default dated May 12, 2014 ("Notice of Default and Termination") which, among other things declared the Subscription Agreement, the Certificate of Designations of Preferences, Rights and Limitations of Series A Preference Shares (the "Certificate of Designations") and the other documents ancillary to the subscription transaction ("Transaction Documents") terminated. Bertsos Decl. at ¶ 14 & Exhibit B.

13. Accordingly, NewLead has advised Ironridge that it will not honor any Conversion Notices or requests to issue additional Common Shares to Ironridge. Bertsos Decl. at ¶ 15.

14. Ironridge has continued to demand issuance of additional Common Shares from the Transfer Agent. Bertsos Decl. at ¶ 16.

15. In doing so, Ironridge relied upon the terms of an Irrevocable Letter of Instruction dated March 4, 2014 ("Irrevocable Letter Of Instruction") which was issued in connection with the initial investment. Bertsos Decl. at ¶ 17 & Exhibit C (without attachments).

16. The Irrevocable Letter of Instruction provides irrevocable instruction to the Transfer Agent in the event that Ironridge was entitled to the issuance of Common Shares in connection with the Conversion of Preferred Shares. Bertsos Decl. at ¶ 18.

17. When Ironridge first converted a portion of its Preference Shares (100 on April 10 and 100 on April 17, 2014), it received the appropriate amount of Common Shares (termed "Conversion Shares" in the Certificate of Designations). However, the Common Shares being issued to Ironridge based upon its recent demands are in connection with its claimed entitlement to "Dividends" and "Embedded Dividend Liability" under the Subscription Agreement. Bertsos Decl. at ¶ 19.

18. Section I.C.2. of the Certificate of Designations specifically provides that:

> Dividends, as well as any applicable Embedded Dividend Liability payable hereunder, are payable **at the Corporation's election**, (a) **in cash**, or (b) in Common Shares valued at the volume weighted average price of the Common Shares for the applicable Equity Conditions Measuring Period, not to exceed 85.0% of the Closing Price on any of the Trading Days during the Equity Conditions Measuring Period.

Bertsos Decl. at ¶ 20 & Exhibit D.

19. To protect itself from Ironridge's ongoing wrongful scheme, in accordance with the Transaction Documents and <u>without prejudice to NewLead's claims in the Arbitration and applications before this Court</u>, on May 27, 2014, NewLead made the election ("Notice of Election") under the Transaction Documents to pay Dividends and any applicable Embedded Dividend Liability in cash, and not in Common Shares of NewLead:

> We are in receipt of your further issuance notice dated May 22, 2014 pursuant to your conversion notices dated April 10, 2014 and April 17, 2014. As we have previously advised you by Notice of Default dated May 12, 2014 (the "Notice"), the Transaction Documents (as that term is defined therein) are no longer valid and in effect because, among other things, of your material breaches of the Transaction Documents as set forth in the Notice.
>
> Notwithstanding the foregoing, if and only to the extent that the Transaction Documents are deemed not to be terminated and/or are determined to be in full force and effect, and only if NewLead is ultimately found to be liable to pay such dividend and any applicable embedded dividend liability by a tribunal of competent jurisdiction, please be advised that NewLead hereby elects to pay the dividend and any applicable embedded dividend liability in cash, and not in common shares of NewLead.
>
> In addition, for all the conversion notices previously delivered and all of the conversion notices requesting additional shares, NewLead never elected to issue common shares to pay such dividends and embedded dividend liability and, therefore, any receipt of common shares in connection with such dividends and embedded dividend liability was in error and NewLead immediately requests the return of such shares and all further conversion notices requesting additional shares are not valid and are to be paid in cash. This election is made without prejudice to any claims or defenses which NewLead now has, or hereafter may have, as against Ironridge.

Bertsos Decl. at ¶ 21 & Exhibit E.

20. As a result, even in the unlikely event that Ironridge were to succeed on its contract claims in the Arbitration (which it will not), <u>Ironridge will not be entitled to the issuance of additional Common Shares as demanded, but only to the payment of cash as provided by the provisions of the Subscription Agreement</u>. Bertsos Decl. at ¶ 22.

21. Notwithstanding both the Notice of Default and Termination and the Letter of Election, Ironridge continued to send directly to VStock additional notices demanding the issuance of Common Shares. Bertsos Decl. at ¶ 24.

22. Indeed, on Friday, May 30, 2014, Ironridge sent directly to VStock a notice demanding an additional 3,820,000 Common Shares (the "May 30, 2014 Conversion Notice"). Bertsos Decl. at ¶ 25 & Exhibit G. Ironridge intends to request and receive shares up to 9.99% of the company's outstanding common shares every day (approximately 2.7 M shares) and sell them to the market.

23. Even though Ironridge is not entitled to additional Common Shares (the Company has elected to pay such Dividends and Embedded Dividend Liability in cash), it is abusing the terms and intent of the Irrevocable Letter of Instruction wrongfully to obtain additional Common Shares for use in its illegal and fraudulent "death spiral" financing and stock manipulation scheme. Bertsos Decl. at ¶ 26.

24. Although NewLead has advised VStock of the existence of both the Notice of Default and Termination and the Letter of Election, VStock has indicated that absent an order from this Court, it will issue the requested Common Shares to Ironridge based upon the Irrevocable Letter of Instruction in connection with the May 30 Conversion Notice and any future conversion notice from Ironridge. Bertsos Decl. at ¶ 27.

25. By this application, NewLead respectfullys ask this Court to enjoin the conversion of Preferred Shares by, and the issuance of any further Common Shares to, Ironridge, pending the outcome of the Arbitration. Bertsos Decl. at ¶ 28.

## THE PARTIES

26. NewLead is an international shipping company that owns a fleet of dry bulk carriers and mining assets whose Common Shares are admitted for listing and trade on NASDAQ under the symbol "NEWL". It is organized and existing under the laws of Bermuda, with a principal place of business located at 83 Akti Miaouli & Flessa Str., 185 38 Piraeus Greece.

27. Ironridge is a British Virgin Islands' company that is part of Ironridge Global Partners, LLC. It maintains a place of business located at 405 Lexington Avenue, 26th Floor, New York, New York.

28. Upon information and belief, VStock is a California limited liability company with a principal place of business in Cedarhurst, New York.

29. NewLead has joined VStock, the current Transfer Agent for the Common Shares of NewLead listed on NASDAQ, because VStock has indicated that, absent an order from this Court, it will honor all conversion or issuance notices from Ironridge based on the Irrevocable Letter of Instruction. VStock will not be a party to the pending Arbitration and is joined here only for notice purposes (for purposes of the application for injunctive relief).

## JURISDICTION AND VENUE

30. This Court has subject matter jurisdiction pursuant to 9 U.S.C. § 201, *et seq.*, because the injunctive relief sought is in aid of currently pending international arbitral proceedings under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.

31. This Court has personal jurisdiction over Respondent because Respondent is found in this District, transacts business in this District or is otherwise subject to jurisdiction pursuant to Sections 301 and 302 of the New York Civil Practice Law and Rules.

32. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2). Respondent is a resident of this District for venue purposes and is subject to personal jurisdiction in this District by reason of its substantial and ongoing activities in this District, including its maintenance of an office at 405 Lexington Avenue, 26th Floor, New York, New York, for the conducting of its business. A substantial part of the events and omissions giving rise to the claims in this action occurred in this District, including Respondent's trading of Petitioner's Common Shares on NASDAQ in New York.

### *Absent Injunctive Relief, NewLead Will Suffer Irreparable Injury*

33. If injunctive relief is not granted, Ironridge's "death spiral" mechanism will have its intended effect: the death of NewLead. Bertsos Decl. at ¶ 29.

34. As stated above, Ironridge has <u>artificially driven down the price of NewLead's Common Shares from $146.50 per share (March 13, 2014) to $0.3899 per share (May 15, 2014) in only **two months**</u>. Bertsos Decl. at ¶ 30.

35. Ironridge's conduct is destroying this developing company's access to the capital needed to pursue its business plans. Bertsos Decl. at ¶ 31.

36. Ironridge intends to continue to convert the Preference Shares and sell the Common Shares arising thereunder (at a significant profit) with a view of driving down the market value of the Common Shares on NASDAQ. If it is not enjoined, NewLead will be put in a position where the market value of its Common Shares will become so low that its business

and the interests of all its other public shareholders will be irreparably damaged. Bertsos Decl. at ¶ 32.

37. If this pattern of abuse is allowed to continue, there is a high likelihood that the Common Shares of NewLead will be de-listed for being unable to comply with the continued listing requirements of NASDAQ, particularly the $1 bid price and minimum market capital rules. Bertsos Decl. at ¶ 33.

38. NewLead is already fielding numerous serious complaints from public shareholders about the sharp decrease in the share price. NewLead fears that if Ironridge is not stopped, NewLead will begin to see possible claims against the company, management and the Board. Bertsos Decl. at ¶ 34.

39. The Board of Directors of NewLead will have no choice but to commence winding-up proceedings. Bertsos Decl. at ¶ 35.

40. On the other hand, Ironridge will suffer no prejudice if an injunction issues. It has already commenced the Arbitration seeking <u>only</u> monetary damages for the alleged delay in converting Preferred Shares and issuing Common Shares. Bertsos Decl. at ¶ 36.

41. The Certificate of Designations provides a calculation mechanism for determining Ironridge's damages in the unlikely event it were to succeed in convincing an arbitrator that it was entitled to the issuance of Common Shares rather than the payment of money. Bertsos Decl. at ¶ 37.

42. Section G.1.b. of the Certificate of Designations provides as follows:

> If the Corporation shall fail, for any reason, to issue or cause to be issued to the Holder, within 3 Trading Days after receipt of the applicable Conversion Notice, the number of Conversion Shares to which the Holder is entitled as stated in the Conversion Notice, then, in addition to all other remedies available to the Holder, the Corporation shall pay in cash to the Holder on each day after such 3rd Trading Day that the issuance of such Conversion Shares is not timely effected an amount equal to 2% of the product of (i) the

> aggregate number of Conversion Shares not issued to the Holder on a timely basis and to which the Holder is entitled and (ii) the highest Closing Price of the Common Shares between the date on which the Corporation should have issued such shares to the Holder and the actual date of receipt by Holder.

Bertsos Decl. at ¶ 38 & Exhibit D.

43. Thus, while NewLead is faced with the destruction of its company and a fraud being perpetrated on it and its public shareholders, Ironridge seeks only money damages which, although unlikely to be awarded, are subject to a contractual calculation. Bertsos Decl. at ¶ 39.

44. It should be noted that in the short time of two and a half months since entering into this transaction, Ironridge, by virtue of its fraudulent scheme, **has already recouped its full investment of $2.5 million and has made an additional $10.5 million in profit**. Bertsos Decl. at ¶ 40.

45. The equities weigh completely in favor of granting the requested relief to NewLead. Bertsos Decl. at ¶ 41.

46. No prior application has been made by NewLead to this or any other Court for the relief requested herein. Bertsos Decl. at ¶ 42.

## FACTUAL BACKGROUND

47. The Court is respectfully referred to the facts set forth in detail in the accompanying Declaration of Antonis Bertsos. The Bertsos Declaration is incorporated herein by reference and made a part of this Petition.

## CLAIM FOR INJUNCTIVE RELIEF

48. NewLead repeats and realleges each and every allegation of the Petition contained in Paragraphs 1 through 47 as if fully set forth herein.

49. There is a currently pending international arbitration between NewLead and Ironridge.

50. Absent injunctive relief, NewLead will suffer irreparable harm, namely the death of its business.

51. NewLead has shown sufficiently serious questions going to the merits of its claims for breach of contract and market manipulation, as set forth in more detail in the foregoing.

52. A balance of the hardships tips decidedly in favor of NewLead, as NewLead is faced with the destruction of its company, while Ironridge seeks only money damages, which is subject to a contractual calculation.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that, pursuant to Rule 65 of the Federal Rules of Civil Procedure and 9 U.S.C. § 201, *et seq.* (New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards), this Court:

(i) Enter a temporary restraining order and preliminary injunction in aid of the Arbitration, enjoining Respondent and those acting in concert with it, including but not limited to VStock Transfer, LLC ("VStock") and any successor transfer agent, pending the confirmation of an Award issued in the Arbitration, from taking any steps whatsoever:

   (a) to convert any of the Series A Preference Shares of NewLead registered in name of Ironridge ("Preference Shares") into Common Shares of NewLead ("Common Shares"); and/or

   (b) to issue any Common Shares to Ironridge, whether in connection with the conversion of the Preference Shares or otherwise; and

    (ii)    Grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
       June 3, 2014

                                **THOMPSON HINE LLP**

                          By: /s/ Richard De Palma

                                Richard De Palma
                                335 Madison Ave. - 12th Floor
                                New York, NY 10017
                                (212) 344-5680 *Telephone*
                                (212) 344-6101 *Facsimile*
                                *Richard.DePalma@ThompsonHine.com*
                                *Counsel for NewLead Holdings Ltd.*